FILED by _MS_ D.C.

JUN 21 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

**16-CV-22336 MARTINEZ/GOODMAN**

Civil Action Number:

CHARLES SILBERMAN

Plaintiff,

v.

Miami-Dade Transit

Defendant,

## COMPLAINT

COMES NOW, PLAINTIFF, CHARLES SILBERMAN, ("PLAINTIFF") a pro-se litigant, files this Complaint and sues Defendant Miami-Dade Transit ("MDT") a political subdivision of the state duly organized pursuant to the laws of the State of Florida for damages and states as follows:

### INTRODUCTION

1. This Action alleges MDT with indifference intentionally or with bad faith discriminated PLAINTIFF violating Title II of the American Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* ("RA").

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, because it involves claims arising under federal law.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the acts and omissions giving rise to this action occurred in the Southern District of Florida.

## PARTIES

4. At all times material hereto PLAINTIFF was a resident of Miami – Dade County, Florida.

5. In or about the year 2000 the Social Security Administration determined PLAINTIFF disabled.

6. PLAINTIFF'S disability is mental illness. Specifically, PLAINTIFF is diagnosed with severe depression recurrent with psychotic episodes.

7. At all times material hereto PLAINTIFF was a qualified individual with a disability under all relevant statutes defining "disability".

8. MDT is located in Miami-Dade County, Florida. MDT is considered a public entity under 42 U.S.C. Section 12131.

9. At all times material hereto MDT, received or was directly benefitted by federal financial assistance.

10. MDT provides "designated public transportation" as defined by 42 U.S.C. § 12141 (2).

11. MDT is the primary public transit authority of Miami, Florida, United States and the greater Miami-Dade County area. It is the largest transit system in Florida and the 15th-largest transit system in the United States.

12. MDT "operates" a "fixed route system" as defined by 42 U.S.C. § 12141 (3) and (4) and 42 U.S.C. § 12142.

13. At all times material hereto MDT operated, managed, directed, and controlled its duties by and thru its agents and/or servants and/or employees acting within the course and scope of their employment and/or agency.

## STATUTORY AND REGULATORY BACKGROUND

14. The Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, as amended, is a comprehensive civil rights law enacted to provide "a clear and comprehensive national mandate for the elimination of discrimination" against individuals with disabilities. 42 U.S.C. § 12101(b)(1). Its coverage is accordingly broad, prohibiting discrimination on the basis of disability including, but not limited to, in state and local government programs and services, and transportation systems.

15. The ADA Title II Part B pertains to public transportation entities such as MDT. MDT must comply with the ADA Title II Part B. The ADA Title II Part B details specific actions that are considered discriminatory under section 12132 of that Title.

16. The ADA Title II Subtitle B is intended to clarify the requirements of the RA for public transportation entities that receive Federal financial assistance. Also it extends coverage to all public entities that provide public transportation, whether or not they receive Federal financial assistance. It establishes detailed and complex standards for the operation of public transit systems.

17. The ADA Title II Subtitle B requires State and local governments to give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities including, but not limited to, public transportation.

18. The ADA Title II Subtitle B requires State and local governments to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity being provided.

19. The ADA Title II Subtitle B prohibits the providers of public services from discriminating against people with disabilities in the provision of their services.

20. A primary goal of the ADA Title II Subtitle B is the equal participation of individuals with disabilities in the "mainstream" of American society. A major principle of mainstreaming is for individuals with disabilities must be integrated to the maximum extent appropriate.

21. The RA prohibits discrimination on the basis of disability in programs receiving federal assistance. Section 504 of the RA states "no qualified individual with a disability in the United States shall be excluded from, the participation in, be denied the benefits of, or be subjected to discrimination under any *program or activity receiving Federal financial assistance* . . . . 29 U.S.C. § 794(a) (emphasis supplied). The statute defines the term "program or activity" as including all of the operations of — (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . any part of which is extended Federal financial assistance. 29 U.S.C. § 794(b).

## FACTS

22. As alleged above all times material hereto PLAINTIFF was a qualified individual with a disability under all relevant statutes defining "disability".

23. At all times material hereto PLAINTIF'S psychiatrist, Dr. Sara Bodner prescribed a psychiatric service dog for Plaintiff.[1]

24. At all times material hereto, PLAINTIFF had a psychiatric service dog named Oscar.[2]

25. At all times material hereto Oscar was a service animal under all relevant statutes defining "service animal".

26. Oscar was trained to , (1) prevent or interrupt PLAINTIFF'S impulsive or destructive behaviors, such as suicide, (2) calm PLAINTIFF during anxiety attacks, (3) mitigate PLAINTIFF'S psychiatric disability, (4) provide PLAINTIFF with a greater sense of self-esteem due to the independence PLAINTIFF experiences having a service animal, (5) provide PLAINTIFF with a sense of safety he otherwise would not have, (6) help PLAINTIFF thru tactile stimulation when PLAINTIFF is emotionally overwhelmed, (7) help PLAINTIFF with his apathy and desire to withdraw caused by depression, and (8) empowers PLAINTIFF to recover and sustain emotional control in settings where uncontrolled emotional reactions are unacceptable.

27. At all times material hereto PLAINTIFF obtained all vaccinations and licensing required by the State of Florida necessary for Oscar.

28. At all times material hereto PLAINTIFF did not own a car.

29. At all times material hereto PLAINTIFF primarily utilized MDT'S designated public transportation system.

30. At all times material hereto PLAINTIFF was accompanied by his service dog.

31. The acts complained herein were undertaken by MDT bus drivers in the course and scope of their employment.

---

[1] Dr. Bodner is an experienced Psychiatrist and Psychopharmacologist practicing in Miami Florida. She has particular expertise treating depression, anxiety and bipolar disorder and is a leader in the recent advances in the treatment of these disorders. She trained at Yale University and the University of Pennsylvania, and was on the faculty of The University of Pennsylvania and the University of Miami.

[2] After the allegations set forth within this Complaint PLAINTIFF'S service dog, Oscar, passed away. PLAINTIFF has taken possession of a new service animal named Rocky.

32. Mr. Marcos Ortega is the MDT ADA officer.

33. On or about December 07, 2014 PLAINTIFF experienced indifferent or bad faith intentional discrimination by a MDT bus driver. PLAINTIFF emailed Mr. Ortega advising him of the incident. The email in part read as follows;

> "Dear Marcos Ortega,
>
> Please be advised of the following.
>
> Yesterday, December 7, 2014, sometime between 3:30 PM and 4:00 PM when boarding Miami - Dade Transit Metrobus, possibly number 04197, Route 120 northbound at the Omni terminal, the bus driver, who refused to provide her name, without asking me whether the animal I had with me was a service animal and without asking me what service the animal provides assumed the service animal was not a service animal. I explained to the bus driver the animal was, in fact, a service animal and provided me with psychiatric and emotional support. With a bus full of passengers the driver refused to continue on her route while I remained on board. The bus driver, refusing to operate the bus, created a riot type atmosphere whereas the bus passengers became irate with me. Bus passengers were screaming at me, cussing at me, mocking me because of my psychiatric disability and demanded I exit the bus. After approximately 15 - 20 minutes of refusing to drive the bus the driver stated to the passengers a supervisor advised her to continue with the route. When I asked the bus driver to identity the supervisor she refused to do so.
>
> I can not imagine a bus driver handling the situation any worse than this bus driver did. After being informed of my psychiatric/emotional disability the bus driver placed me in a position whereas the bus passengers were revolting against me demanding I disembark the bus. I was psychiatrically harmed and injured by the bus driver's failure to respect my civil rights. Additionally I felt physically threatened.
>
> I have been extremely emotionally distressed by these events. Please do what you can do to see this discrimination practice ends".

34. On December 18, 2014 Mr. Ortega responded to PLAINTIFF'S email. The email in part stated;

> "Dear Mr. Silberman- This email formally responds to your complaint of December 8, 2014, regarding Miami-Dade Transit's (MDT) fixed-route service.
>
> Following our internal procedures, MDT Office of Civil Rights and Labor Relations (OCR & LR), ADA Unit investigated your complaint and requested information from Miami-Dade Transit Bus Operations Division, including a copy of the video recorded during the incident. We received a copy of the video on December 17, 2014 and reviewed it in its entirety. After a detailed review, it is our conclusion that the Operator clearly failed to follow not only the provisions of the Americans with Disabilities Act, but also

MDT's own internal procedures and training in what concerns service animals and riders with disabilities. In consequence, the Operator will be subjected to the appropriate disciplinary action and a comprehensive retraining on all ADA requirements". [3]

35. On February 17, 2015 PLAINTIFF experienced indifferent or with bad faith intentional discrimination by a MDT bus driver. PLAINTIFF emailed Mr. Ortega advising him of the incident. The email in part read as follows;

> "Mr. Ortega,
>
> Please be advised, once again, I have been discriminated by a Miami-Dade Transit driver. The incident occurred on 02/17/15. The bus number was 4208. The route was "S". Please see the video/audio recordings and get back to me at your earliest convenience".

36. On February 25, 2015 Mr. Ortega responded to PLAINTIFF'S email. The email in part stated;

> "Following our internal procedures, MDT Office of Civil Rights and Labor Relations (OCR & LR), ADA Unit investigated your complaint and requested information from Miami-Dade Transit Bus Operations Division, including a copy of the video recorded during the incident. We received a copy of the video on February 25, 2015, and reviewed it in its entirety. After a detailed review of the video and audio segment, we found that the Operator failed to follow the Americans with Disabilities Act's requirements, but also MDT's own internal procedures concerning service animals and riders with disabilities. Therefore, the Operator will be subjected to the appropriate disciplinary action and a comprehensive retraining on all ADA requirements".

37. On July 26, 2015 PLAINTIFF experienced indifferent or with bad faith intentional discrimination by a MDT bus driver. PLAINTIFF emailed Mr. Ortega advising him of the incident. The email in part read as follows;

> "Mr. Ortega,
>
> Please be advised of the following. On July 26, 2015, bus number 6162 Route C intentionally passed me by at Indian Creek Road and 31st street because I had a "dog". Obviously there was no way the driver knew whether the "dog" was a "dog" or as is a matter of fact a service animal. Subsequently a Route S bus picked my service dog and I up. When I reached the Omni terminal bus number 6162 Route C was there. I spoke with the Route C driver who told me he intentionally passed me by because I had a "dog" please review the video and audio tapes in its entirety and advise me the results of your response".

38. Because PLAINTIFF failed to contact Mr. Ortega within 72 hours of the incident described above, the video and audio recordings of the incident were not available. PLAINTIFF elected to drop the complaint.

39. The specific incidents described above were documented only after PLAINTIFF experienced numerous times MTD bus driver's indifferent or with bad faith intentional discrimination by;

    (a) refusing to stop upon visualizing PLAINTIFF"S service dog denying PLAINTIFF the opportunity to use MDT services,
    (b) refusing to open the bus door upon visualizing PLAINTIFF"S service dog denying PLAINTIFF the opportunity to use MDT services,
    (c) requiring from PLAINTIFF documentation certifying PLAINTIFF"S dog as a service animal, [4]
    (d) requiring PLAINTIFF'S service dog "caged", [5]
    (e) improperly questioning PLAINTIFF on the nature of his disability.

40. MDT failed to adequately train its bus drivers to perform their duties consistent with accommodating PLAINTIFF'S disability.

41. The actions of MDT bus drivers violated PLAINTIFF'S federally protected ADA and RA rights, and were done knowingly with indifference intentionally or with bad faith discriminating PLAINTIFF.

42. Pursuant to Section 37.173 Training "every employee of a transportation provider who is involved with service to persons with disabilities must have been trained so that he or she knows what needs to be done to provide the service in the right way. When it comes to providing service to individuals with disabilities, ignorance is no excuse for failure."

43. Pursuant to Section 37.173 Training "An employee who has forgotten what was told in past training sessions, so that he or she does not know what needs to be done to serve individuals with disabilities, does not meet the standard of being trained to proficiency".

44. Pursuant to Section 37.173 Training "every public contact employee also has to understand the necessity of treating individuals with disabilities courteously and respectfully and the details of what that involves".

---

[4] As a matter of ADA and RA statutes and regulations MDT bus drivers may ask a passenger if their service animal is a service animal and/or if the service animal assists the passenger with a disability, but CANNOT require certification or identification for service animals. Documentation that the service animal is trained is not a precondition for providing service to an individual accompanied by a service animal.

[5] Service dogs must remain at the owner's feet or on the owner's lap. Caging a service dog may prevent the service animal from providing the tasks necessary to alleviate the disabled persons related disability needs.

45. Because of the numerous incidents MDT bus drivers with indifference intentionally or with bad faith discriminated PLAINTIFF, PLAINTIFF experienced significant mental distress to the extent PLAINTIFF has not utilized MDT transportation services as much for fear of being subjected to more indifferent or with bad faith intentional discrimination.

46. As a direct and proximate result of MDT bus driver's indifference or with bad faith intentional discrimination, Plaintiff has been damaged suffering humiliation, embarrassment, loss of dignity and mental anguish.

47. PLAINTIFF'S diagnoses, severe depression recurrent with psychotic episodes was exasperated as a result of MDT'S bus driver's indifference or with bad faith intentional discrimination.

## COUNT I
## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT

48. Plaintiff realleges and incorporates paragraphs 1 – 47 as though fully set forth herein.

49. PLAINTIFF is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. § 12131, *et seq.*

50. PLAINTIFF'S dog, Oscar, was a "service animal" within the meaning of the ADA.

51. MDT is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131, *et seq.*

52. MTA provides public transportation services to the general public in Miami-Dade County, Florida.

53. MDT with indifference or with bad faith intentionally discriminated PLAINTIFF'S ADA statutory rights solely on the basis of his disability.

54. MDT'S bus drivers, upon visualizing PLAINTIFF"S service dog, refused to stop the bus denying PLAINTIFF the benefits of MDT services.

55. MDT'S bus drivers would stop to pick up PLAINTIFF. However upon visualizing PLAINTIFF"S service dog MDT'S bus drivers refused to open the bus door then drove away denying PLAINTIFF the benefits of MDT services.

56. MDT'S bus drivers required documentation from PLAINTIFF certifying PLAINTIFF"S dog as a service animal.

57. MDT'S bus drivers required PLAINTIFF'S service dog "caged".

58. MDT'S bus drivers improperly questioned PLAINTIFF on the nature of his disability.

59. Pursuant to Section 37.173 Training "every employee of a transportation provider who is involved with service to persons with disabilities must have been trained so that he or she knows what needs to be done to provide the service in the right way. When it comes to providing service to individuals with disabilities, ignorance is no excuse for failure."

60. Pursuant to Section 37.173 Training "An employee who has forgotten what was told in past training sessions, so that he or she does not know what needs to be done to serve individuals with disabilities, does not meet the standard of being trained to proficiency".

61. Pursuant to Section 37.173 Training "every public contact employee also has to understand the necessity of treating individuals with disabilities courteously and respectfully and the details of what that involves".

62. MDT knew or should have known PLAINTIFF'S federally protected ADA rights were substantially likely to be violated and failed to act on that likelihood.

63. MDT, with indifference or with bad faith intentionally discriminated PLAINTIFF violating a primary goal of the ADA, PLAINTIFF'S equal participation in the mainstream of American society.

64. MDT knew or should have known its deliberate indifference to PLAINTIFF'S federally protected ADA rights would cause PLAINTIFF harm in his ability to enjoy equal participation in the mainstream of American society.

65. As a direct and proximate result of MDT bus driver's indifference or with bad faith intentional discrimination, Plaintiff has been damaged suffering humiliation, embarrassment, loss of dignity and mental anguish.

66. PLAINTIFF'S diagnoses, severe depression recurrent with psychotic episodes was exasperated as a result of MDT'S bus driver's indifference or with bad faith intentional discrimination.

67. As a result of MDT'S indifference or with bad faith intentional discrimination solely on the basis of PLAINTIFF"S disability, PLAINTIFF has suffered and will continue to suffer extreme hardship, impending harm, actual harm and irreparable harm.

**WHEREFORE,** PLAINTIFF respectfully pray this Court grant the following relief against MDT, stating MDT'S practices, policies and procedures have subjected PLAINTIFF to indifferent or with bad faith intentional discrimination in violation of the ADA, award compensatory damages; reasonable costs; and award any and all other relief that may be necessary and appropriate.

## COUNT II
## VIOLATION OF SECTION 504 OF THE REHABILITION ACT OF 1973, 29 U.S.C. SECTION 794

68. Plaintiff realleges and incorporates paragraphs 1 - 47 as though fully set forth herein.

69. PLAINTIFF is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. § 12131, *et seq.*

70. PLAINTIFF'S dog, Oscar, was a "service animal" within the meaning of the ADA.

71. MDT is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131, *et seq.*

72. MTA provides public transportation services to the general public in Miami-Dade County, Florida.

73. MDT receives federal financial assistance and is, therefore, a covered entity within the meaning of the RA.

74. The RA prohibits discrimination on the basis of disability in programs receiving federal assistance. Section 504 of the RA states "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program that receives federal financial assistance.

75. MDT, with indifference or with bad faith, intentionally discriminated PLAINTIFF'S RA statutory rights solely on the basis of his disability.

76. MDT'S bus drivers, upon visualizing PLAINTIFF"S service dog, refused to stop the bus denying PLAINTIFF the opportunity to use MDT services.

77. MDT'S bus drivers would stop to pick up PLAINTIFF. However upon visualizing PLAINTIFF"S service dog MDT'S bus drivers refused to open the bus door then drove away denying PLAINTIFF the opportunity to use MDT services.

78. MDT'S bus drivers required documentation from PLAINTIFF certifying PLAINTIFF"S dog as a service animal.

79. MDT'S bus drivers required PLAINTIFF'S service dog "caged".

80. MDT'S bus drivers improperly questioned PLAINTIFF on the nature of his disability.

81. Pursuant to Section 37.173 Training "every employee of a transportation provider who is involved with service to persons with disabilities must have been trained so that he or she knows what needs to be done to provide the service in the right way. When it comes to providing service to individuals with disabilities, ignorance is no excuse for failure."

82. Pursuant to Section 37.173 Training "An employee who has forgotten what was told in past training sessions, so that he or she does not know what needs to be done to serve individuals with disabilities, does not meet the standard of being trained to proficiency".

83. Pursuant to Section 37.173 Training "every public contact employee also has to understand the necessity of treating individuals with disabilities courteously and respectfully and the details of what that involves".

84. MDT knew or should have known PLAINTIFF'S federally protected RA rights were substantially likely to be violated and failed to act on that likelihood.

85. MDT, with indifference or with bad faith intentionally, discriminated PLAINTIFF violating a primary goal of the RA, PLAINTIFF'S equal participation in the mainstream of American society.

86. MDT knew or should have known its deliberate indifference to PLAINTIFF'S federally protected RA rights would cause PLAINTIFF harm in his ability to enjoy equal participation in the mainstream of American society.

87. As a direct and proximate result of MDT bus driver's indifference or with bad faith intentional discrimination, Plaintiff has been damaged suffering humiliation, embarrassment, loss of dignity and mental anguish.

88. PLAINTIFF'S diagnoses, severe depression recurrent with psychotic episodes was exasperated as a result of MDT'S bus driver's indifference or with bad faith intentional discrimination.

89. As a result of MDT'S indifference or with bad faith intentional discrimination solely on the basis of PLAINTIFF"S disability PLAINTIFF has suffered and will continue to suffer extreme hardship, impending harm, actual harm and irreparable harm.

**WHEREFORE,** PLAINTIFF respectfully pray this Court grant the following relief against DEFENDANT, stating MDT'S practices, policies and procedures have subjected PLAINTIFF to indifferent or with bad faith intentional discrimination in violation of the RA, award compensatory damages; reasonable costs; and award any and all other relief that may be necessary and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL IS PERMITTED.**

Dated this 10th day of June 2016.

Respectfully submitted,

CHARLES SILBERMAN
4865 Ponce de Leon Blvd.
Coral Gables, Florida 33146
Phone (305) 710 – 6448
E-mail: charlie.silberman@yahoo.com
Pro – se litigant